CHICAGO & NORTH WESTERN RAILWAY COMPANY, Appellant, vs. PUBLIC SERVICE COMMISSION, Respondent.

*October 10—November 7, 1956.*

For the appellant there was a brief by *Edward H. Borgelt, Edmund W. Powell,* and *Roger S. Bessey,* all of Milwaukee, and oral argument by *Mr. Bessey.*

For the respondent there was a brief by the *Attorney General* and *William E. Torkelson,* chief counsel for the Public Service Commission, and oral argument by *Mr. Torkelson.*

BROWN, J. The statute in question is:

"195.29 RAILROAD HIGHWAY CROSSINGS. (1) *Petition, hearing, order.* Upon petition by the common council or

board of any city, village, town, or county within or bordering upon which a highway or street crosses a railroad, or a highway or street is proposed to be laid out across a railroad, or a public highway bridge across a railroad is required to connect existing streets or highways, or upon petition by any railroad whose track crosses or is about to cross, or is crossed or about to be crossed by a street or highway, or upon petition by the state highway commission, in cases where provision has been made for the improvement of the highway adjacent to such crossing under any state aid or federal aid law, that public safety requires an alteration in such crossing, its approaches, the method of crossing, the location of the highway or crossing, or the closing of the crossing, and the substitution of another therefor at grade or not at grade, or the removal of obstructions to the view at such crossing, the relocation of the highway, or requires the determination of the manner of making such new crossing, or of making the proposed improvement or promoting the public safety or public convenience through any other reasonable method, and praying that the same may be ordered, the commission shall give notice to the parties in interest and proceed to investigate the same and to order a hearing thereon in the manner provided by section 196.26; and the commission shall determine what, if anything, shall be done to promote the public safety and the means by which it shall be accomplished, whether by the relocation of the highway, the alteration in such crossing, approaches, mode of crossing, location of highway crossing, closing of highway crossing, with or without the substitution of another therefor, the construction of a public highway bridge, the removal of obstructions to sight at crossing, or by the use of other reasonable methods, and by whom the same shall be made, and in case of new crossings the advisability of allowing such crossings to be established and manner of making them.

"(2) *Apportionment of expense.* The commission shall fix the proportion of the cost and expense of alterations, removals, and new crossings, or any other work ordered, including the damages to any person whose land is taken, and the special damages which the owner of any land adjoining the public street or highway shall sustain by reason of a change in the grade of such street or highway, or by reason

of the removal of obstructions to view at such crossings, to be paid or borne by the railroad companies and the municipalities in interest. In fixing such proportion, the commission may order such cost and expense so apportioned to be paid by the parties against which the apportionment shall be made."

Widening the traveled portion of the street across and adjacent to the railway's tracks left the previously installed automatic electric wigwag signals within the traveled portion of the widened street. It would also result in trains making part of their crossing while the signals were not functioning. The city informed the railway that its signals were an obstruction in the street and asked the railway to remove them. The railway complied and relocated them just outside the new curb lines. Then it brought this proceeding before the commission to recover from the city part of the cost of the relocation.

Upon the railroad's petition, sec. 195.29 (1), Stats., commands the commission to hold a hearing. The commission did so and came to the conclusion that sec. 195.29 gave it no jurisdiction in the premises. It based its decision upon its interpretation of the statute that its jurisdiction to apportion costs, as permitted by sec. 195.29 (2), is limited by sec. 195.29 (1) to situations where a new crossing is established, an existing one is relocated, or an existing one is altered. It submits that obviously no new or relocated crossing is involved here and the changes made by the city were too slight to constitute an "alteration" within the legislative meaning but are merely matters of street improvement in which the commission cannot and should not participate; the commission, however, does not renounce jurisdiction to participate by appropriate orders in cases where the widening of a crossing effects so great a change that it may properly be deemed an alteration. It merely says that this improvement was too slight in its results to be so designated. The railway challenges this interpretation as too narrow. The commission, to

support its argument, cites *Zache v. West Bend* (1954), 268 Wis. 291, 293, 67 N. W. (2d) 301, in which we said:

"Ch. 80, Stats., relates to highways, including town highways, and directs the procedure to be followed in laying out, widening, altering, or discontinuing them. Laying out, widening, or discontinuing are obviously not in this suit. The alterations contemplated and affected by the statute are those which change the boundaries of the highway, not alterations resulting from work done within the established highway limits."

Though in the instant case the work done was within the established highway limits, we do not find this citation helpful. In the *Zache Case, supra,* we did not find that the change in the highway was not an alteration, but only that it was not the sort of alteration contemplated by ch. 80, Stats. Without any inconsistency, the alterations contemplated by the legislature in a statute directed toward one object are not necessarily the same as those contemplated by another enacted for an entirely different purpose.

Because, for another reason, the commission lacks jurisdiction to grant the relief asked by the railway, we do not pursue this subject nor attempt to determine whether the action of the city in respect to this crossing so altered it as to give the commission jurisdiction "to determine" in the words of sec. 195.29 (1), Stats., "what, if anything, shall be done to promote the public safety and the means by which it shall be accomplished [examples given] . . . or by the use of other reasonable methods, and by whom the same shall be made," and, further, jurisdiction to determine, under sec. 195.29 (2), the proportion of the cost and expense of any work ordered, to be paid or borne by the railroad companies and the municipality in interest and to order the expense, as so apportioned, to be paid.

The reason to which we have referred is that the commission, first, must have jurisdiction over the subject matter,

a question upon which we do not now rule, and, second, such jurisdiction being established, it may determine what, if anything, should be done to promote the public safety, who is to do it, and to fix between the railway and the city the proportions of the cost and expense of *any work ordered* and direct payment.

The commission has not ordered work to be done. The railway does not ask it to order any. It asks the commission to apportion the expense of work which the commission *did not* order. Nothing in the statute, as we read it, gives the commission any jurisdiction to do that or to command a municipality to pay for work not done in compliance with an order of the commission. This lack of jurisdiction requires affirmation of the judgment sustaining the dismissal of appellant's petition and makes consideration of other contentions of the parties unnecessary.

*By the Court.*—Judgment affirmed.