CHICAGO & NORTH WESTERN RAILWAY COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION, Respondent.

*No. 197. Argued March 6, 1969.—Decided April 1, 1969.*
(Also reported in 166 N. W. 2d 143.)

For the appellant there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Roger S. Bessey* and *Paul J. Kraemer* of counsel, all of Milwaukee, and oral argument by *Mr. Bessey.*

For the respondent the cause was argued by *William E. Torkelson,* chief counsel, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J. The disposition of this case involves the consideration of two statutes: Sec. 195.29 (1) and (2),[1]

---

[1] "Railroad highway crossings. (1) PETITION, HEARING, ORDER. Upon petition by the common council or board of any city, village, town or county within or bordering upon which a highway or street crosses a railroad, or a highway or street is proposed to be laid out across a railroad, or a public highway bridge across a railroad is required to connect existing streets or highways, or upon petition by any railroad whose track crosses or is about to cross, or is

and sec. 195.28.[2] The initial issue is whether sec. 195.29 (1) is applicable, and this depends upon the meaning of the word "alteration" as used in the statutes.

crossed or about to be crossed by a street or highway, or upon petition by the state highway commission, in cases where provision has been made for the improvement of the highway adjacent to such crossing under any state aid or federal aid law, that public safety requires an alteration in such crossing, its approaches, the method of crossing, the location of the highway or crossing, or the closing of the crossing, and the substitution of another therefor at grade or not at grade, or the removal of obstructions to the view at such crossing, the relocation of the highway, or requires the determination of the manner of making such new crossing, or of making the proposed improvement or promoting the public safety or public convenience through any other reasonable method, and praying that the same may be ordered, the commission shall give notice to the parties in interest and proceed to investigate the same and to order a hearing thereon in the manner provided by section 196.26; and the commission shall determine what, if anything, shall be done to promote the public safety and the means by which it shall be accomplished, whether by the relocation of the highway, the alteration in such crossing, approaches, mode of crossing, location of highway crossing, closing of highway crossing, with or without the substitution of another therefor, the construction of a public highway bridge, the removal of obstructions to sight at crossing, or by the use of other reasonable methods, and by whom the same shall be made, and in case of new crossings the advisability of allowing such crossings to be established and manner of making them.

"(2) APPORTIONMENT OF EXPENSE. The commission shall fix the proportion of the cost and expense of alterations, removals and new crossings, or any other work ordered, including the damages to any person whose land is taken, and the special damages which the owner of any land adjoining the public street or highway shall sustain by reason of a change in the grade of such street or highway, or by reason of the removal of obstructions to view at such crossings, to be paid or borne by the railroad companies and the municipalities in interest. In fixing such proportion, the commission may order such cost and expense so apportioned to be paid by the parties against which the apportionment shall be made."

[2] "Protecting grade crossings. Upon petition of the city council, village board, member of town board, superintendent of highways or by 5 or more freeholders in any town, village or city, or of any

The facts of this case are undisputed. The appellant's railroad tracks cross Decorah road within the city limits of West Bend. The city decided to widen Decorah road in the area of the crossing from 19.5 feet to 40 feet.

Except for a length of road a few hundred feet on either side of the railroad crossing, Decorah road had been widened to 40 feet previously.

The railroad crossing is protected by two electric warning devices which are outside the traveled portion of the old road, but inside the traveled portion of the widened road. Nobody disputes the fact that these signals give an adequate warning to protect the public. Neither does anyone take issue with the fact that the signals must be moved. The sole problem involved in this case is who has to pay for the moving of the signals.

In November, 1965, the city notified the appellant that Decorah road was to be widened and that the railroad crossing and the warning signals would be affected. The appellant initially estimated the cost of moving the signals at $915 and requested that the city submit a purchase order for that amount. The appellant also offered

railroad corporation to determine whether a public highway and railroad grade crossing is dangerous to human life, the commission shall proceed as provided in s. 196.26. Notice of hearing shall be served upon the highway commission, which shall be an interested party, and any recommendation it may file with the public service commission at or prior to the hearing regarding crossing protection or apportionment of the cost thereof shall be considered as evidence in the proceeding. The commission shall determine whether the existing warning devices at such crossing are adequate, and if the crossing complained of is dangerous to human life, the commission may order the railroad company to keep a flagman there, or may order the installation of gates, electric signals or other suitable safety device at such crossing. The cost of such protection, excluding the cost of maintenance or flagmen, shall be apportioned by the commission between the railroad and the state on the basis of benefits received by the railroad and the public, respectively. The public's portion shall be paid by the state from the appropriation in s. 20.395 (4) (v). In no case shall the state's share exceed 70% of the cost."

to provide whatever planking was necessary to widen the crossing if the city supplied the blacktop paving.

On September 14, 1966, the city filed a petition with the PSC for an order requiring the railway to move the crossing signals at its own expense.

On September 29, 1966, the PSC issued notice that it would investigate the matter pursuant to sec. 195.28, Stats. (the pertinent provisions of that section will be discussed later in the opinion). Testimony was taken on October 12, 1966, and on February 1, 1967. The PSC found that during an average twenty-four-hour period about 4,000 vehicles presently used Decorah road. Over the same period, eight trains used the crossing. There had been no accidents at the crossing since the automatic signals were installed in 1951. The Decorah road right-of-way is 80 feet wide. The proposed widening of Decorah road and approaches to the railroad tracks will result in making the present warning signals an obstruction to the flow of vehicular traffic. The railroad company estimated the cost of moving the signals at $1,140.

The appellant contends that the PSC erred as a matter of law in refusing to act under sec. 195.29 (1) and (2), Stats.

Appellant further contends that if this case is properly brought under sec. 195.29, Stats., the PSC erred in concluding that the entire cost of moving the signals should be paid by the railroad.

Finally the appellant contends that certain procedural errors necessitate a reversal of the PSC's order.

*Applicability of Sec. 195.29 (1), Stats.*

It should be noted in the first instance that the petition of the city of West Bend did not specify under which section of the statutes relief was being sought. When the PSC issued its notice of hearing, the notice specified that the city had requested relief under sec. 195.28, Stats. This factor is particularly interesting because this court

has previously entertained the identical question involved here in a 1956 case between these same two parties. *Chicago & N. W. Ry. v. Public Service Comm.* (1956), 273 Wis. 654, 79 N. W. 2d 110. At that time the court did not determine the issue because the case was disposed of on a jurisdictional question.

The PSC contends that it has no jurisdiction under sec. 195.29 (1), Stats., until the public safety requires (1) an "alteration" in the Decorah road crossing; (2) the "relocation" of the highway; or (3) the establishment of a "new crossing." Of these three categories the only possibility under the facts of this case would be an "alteration." However, the PSC construed "alteration" as a substantial change in either the grade or the alignment (*i.e.,* the angle at which the railroad tracks meet the street) of the crossing.

The position taken by the PSC appears to be opposed to that taken in 1956.

"Upon the railroad's petition, sec. 195.29 (1), Stats., commands the commission to hold a hearing. The commission did so and came to the conclusion that sec. 195.29 gave it no jurisdiction in the premises. It based its decision upon its interpretation of the statute that its jurisdiction to apportion costs, as permitted by sec. 195.29 (2), is limited by sec. 195.29 (1) to situations where a new crossing is established, an existing one is relocated, or an existing one is altered. It submits that obviously no new or relocated crossing is involved here and the changes made by the city were too slight to constitute an 'alteration' within the legislative meaning but are merely matters of street improvement in which the commission cannot and should not participate; *the commission, however, does not renounce jurisdiction to participate by appropriate orders in cases where the widening of a crossing effects so great a change that it may properly be deemed an alteration.* It merely says that this improvement was too slight in its results to be so designated. . . ." *Chicago & N. W. Ry. v. Public Service Comm., supra,* at page 657. (Emphasis supplied.)

The briefs filed in the case cited above disclose that the traveled portion of the road involved there was widened from 20 feet to 32 feet.

The gist of the PSC's argument in this case is that "alteration" has no fixed and definite meaning, that the interpretation which the PSC has applied to "alteration" is a reasonable one, that the PSC has consistently interpreted the word in the same way, and that the court should defer to the interpretation used by the commission when it is reasonable.

There can be no doubt that *when a statute is considered to be ambiguous,* the interpretation rendered by an administrative agency is entitled to great weight.

". . . If we were presently disposed to consider the proper construction of the statute doubtful, this practical construction of the statute long followed by the *Railroad Commission* with the apparent acquiescence of the legislature as well as those affected thereby, would be entitled to great weight. . . ." *Marinette, T. & W. R. R. v. Railroad Comm.* (1928), 195 Wis. 462, 465, 218 N. W. 724. *See also, Chevrolet Division, G. M. C. v. Industrial Comm.* (1966), 31 Wis. 2d 481, 143 N. W. 2d 532, and *National Amusement Co. v. Department of Revenue* (1969), 41 Wis. 2d 261, 163 N. W. 2d 625.

It is also true, however, that

". . . administrative interpretation is only of significance where there is an ambiguity in the statute. It cannot overcome the plain wording of a statute where there is no ambiguity. *Nelson v. Ohio Casualty Ins. Co.* (1966), 29 Wis. 2d 315, 320, 139 N. W. 2d 33.

The PSC also argues that the railroad has acquiesced in its interpretation of secs. 195.28 and 195.29, Stats., over a long period of time. That argument should be considered in light of the fact that this particular railroad company has brought the identical question involved in this case to this court on two separate occasions. A more unbiased summary of the rulings acquiesced in by this appellant would undoubtedly conclude that the ap-

pellant has conceded that sec. 195.28 applies when electric warning signals are initially installed at a railroad crossing. *See* 24 PSCW 53 and 24 PSCW 504 from which orders no appeal was taken.

We cannot agree that the PSC's interpretation of "alteration" is reasonable insofar as the commission contends that an "alteration" only occurs when either the grade or the alignment of the crossing is changed. Insofar as the commission contends that an "alteration" must be a substantial change (which was the commission's position in 1956), the interpretation could be upheld as reasonable.[3] However, when the traveled portion of a roadway is widened over 100 percent, the crossing has certainly been substantially altered as a matter of law.

The PSC insists that if "alteration" is equated with "change," every repair or repaving in the vicinity of a railroad crossing would result in a hearing before the commission. That argument completely disregards the obligations imposed on the railroad under secs. 86.12,[4]

---

[3] *See Cawker v. Trimmel* (1913), 155 Wis. 108, 112, 143 N. W. 1046, where the court defined "alteration" as it appeared in a lease:

"Ordinarily the word 'alteration' as applied to a building means a substantial change therein. . . ."

[4] **"Highway railroad grade crossings; construction and repair.** It shall be the duty of all steam railroad companies owning or operating tracks crossing streets or highways at grade to keep the surface of the crossings between the tracks and rails and extending 4 feet on either side of the outside rails, in good condition and repair for highway travel; the common council, the village board, or town board of the municipality in which the crossing is located, may by resolution require any such railroad company to pave, plank, repair, change or otherwise improve such crossings, as the needs require, and the clerk of such city, village or town shall cause to be served upon the local agent of such railroad company a copy of such resolution; and if the railroad company shall fail for 30 days thereafter to comply with such resolution, the city, village or town may pave, plank, repair, change or otherwise improve such crossing as designated by said resolution, and may recover the reasonable cost thereof from the rail-

and 86.13 (1),[5] Stats. These sections require railroad companies to repave and repair the area between their tracks and the area within four feet of their tracks at a crossing. The necessary work is to be done at the expense of the railroad company. These special statutes would seem to insure that the PSC will not be flooded with petty claims. It should be noted that the warning signals involved in this case were beyond four feet from the edge of the tracks.[6]

It follows then that the PSC should have followed the procedure set out in sec. 195.29, Stats., for this case. Sec. 195.28 is clearly limited to those situations where existing warning devices are inadequate to provide a proper warning. The language of sec. 195.28 is not broad enough to empower the PSC to order the moving of warning signals which admittedly provide an adequate warning.

---

road company in the manner provided in s. 66.695. The duty imposed upon railroad companies, and the remedy given by this section, shall be in addition to other duties and remedies, and shall not be construed to repeal any other duties or remedies."

[5] "Railroads to maintain highway crossings. (1) When any street or highway crosses any railroad track at grade, the company owning or operating the railroad shall grade, construct and maintain in good and safe condition for public travel the portion of such street or highway extending across said track. When such street or highway shall be or is about to be paved, surfaced or otherwise improved, the railway company shall improve, pave or surface such crossing between the tracks and rails and extending 4 feet beyond the outside rails on its right of way in substantially the same manner as the adjacent highway and with substantially the same materials, but this provision applies in cities only when the work is under ch. 83 or 84. This section shall not restrict the application of s. 66.694 relating to special assessments against railroads for street improvements."

[6] Although the record does not contain a statement that the signals were beyond four feet from the edge of the tracks, certain maps which are part of the record, have been verified as scale drawings. The maps indicate that the warning signals are 10 to 12 feet from the edge of the tracks.

We think it is quite clear that sec. 195.29, Stats., is applicable to this case. Therefore it is unnecessary to determine whether the apportionment of damages under sec. 195.28 was improper. Likewise, appellant's allegations of procedural error now become moot. The matter must be remanded with directions to the circuit court to further remand the case to the PSC to order the movement of the signals pursuant to sec. 195.29 (1), and to apportion the expenses pursuant to sec. 195.29 (2).

*By the Court.*—Judgment reversed, and cause remanded with directions consistent with this opinion.